IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RICKEY MOBLEY | : | |
| Plaintiff | : | |
| v. | : | Civil Action No. AMD-05-1664 |
| STATE OF MARYLAND, *et al.*, | : | |
| Defendants | : | |

...o0o...

MEMORANDUM

This civil rights action, filed on June 17, 2005, alleges that defendants engaged in a conspiracy to kill plaintiff. Paper No. 4. Defendants have filed a motion to dismiss or for summary judgment. Paper No. 25. Plaintiff has opposed the motion and has moved for appointment of counsel. Papers No. 28 and 29. Upon review of the papers filed, this court finds a hearing in this matter unnecessary. *See* Local Rule 106.5 (D. Md. 2004). For the reasons that follow, defendants' motion, construed as a motion for summary judgment, shall be granted.

I.

Plaintiff claims that on March 16, 2004, "a planned attempt on the taking of my life materialized and was revealed (to my understanding) to the warden." Paper No. 4 at p. 6. He alleges that Officer Broughman destroyed his mail, made attempts on his life, and led all of the officers assigned to his housing unit in an effort to have plaintiff killed. *Id.* He asserts that Officers Smith and Broughman watched while Officer Petler escorted an inmate who carried a knife into the shower stalls and recreation room area. Plaintiff claims the inmate had been directed to harm him. *Id.* Prior to this alleged attempt on his life, plaintiff claims that on February 9, 2004, he wrote to a state agency concerning an allegation of excessive force against Officer Milbourn and Sergeant Isaacs.

Plaintiff next alleges that on an unspecified date the correctional officers assigned to the 8:00 a.m. to 4:00 p.m. shift tried to poison him during lunch. Plaintiff also claims that a white inmate named Pruit was provided with an ice pick by Security Chief Dykes to be used to injure or kill him. He states that there was a plan, which he attributes partially to Dykes, to hang him and make it appear that he had committed suicide. Alternatively, plaintiff claims there was a plan to break his neck.

On March 20, 2004, another plan to hang him allegedly was formulated because of a story he wrote.[1] Plaintiff states that this plan to hang him was aborted after the details of the story were checked by correctional officers at the direction of Warden Kupec.

Plaintiff also claims that Officer Collins heard from other inmates that plaintiff was a hit man and asked an acquaintance to look into plaintiff's FBI file. He claims that the FBI file implicated him in the 1988 death of Michael Bynum and alleged he was associated with foreign nationals. Plaintiff does not allege that any of this information was used against him or that Collins did anything to him based on this information.

On May 14, 2004, Officer Volske allegedly refused to feed plaintiff dinner and a confrontation resulted. Plaintiff admits that as a result of the confrontation he threw "liquid" on the officer. After the incident, Volske came back to plaintiff's cell during pill call and plaintiff poured liquid on his shoes. As a result, Volske sprayed pepper mace on plaintiff and removed him from his cell to an office where an incident report was prepared. Plaintiff characterizes Volske's reaction as excessive force. He claims that while he was in the office he provided Lieutenant Colbourne with a bottle of respiratory poison he collected from past meals. According to plaintiff, Colbourne

---

[1] Plaintiff explains that he wrote a story about killing a correctional officer during the officer's drive home from work. He admits the story was written after Officer Collins refused to hand plaintiff his meal through the slot in his door and instead kicked the bag down the tier and spit in his ice.

promised plaintiff that he would have the bottle's contents analyzed.  Plaintiff states that he never received any results of any tests performed and that he was transferred to the Maryland House of Correction Annex, now known as Jessup Correctional Institution ("JCI"), on October 19, 2004.

On December 14, 2004, while incarcerated at JCI, plaintiff claims that he when he broke away from the grips of two correctional officers he was tackled to the ground, resulting in a fractured ankle.  On August 11, 2005, plaintiff claims that he was extracted from his cell after he complained about the low water pressure.  Paper No. 9.  He admits to calling Captain Tames derogatory names and holding the slot on his door closed despite orders to release it.  *Id*.  He claims pepper spray was unnecessarily sprayed into his cell and the slot was forced open. *Id*. After plaintiff was handcuffed behind his back, he claims he was escorted to the medical unit, assaulted by the officers escorting him, and suffered a fractured rib as a result. *Id*.

## II.

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950).  The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (*citing Charbonnages de France v. Smith*, 597 F.2d 406, 414

(4th Cir. 1979)).

In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256.

In *Celotex*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324. However, "a mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

III.

The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to plaintiff's allegations of failure to protect him from violence and excessive force and of conspiracy to cause him bodily harm or death.

"[A]n inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise properly raised by the defendant." *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F. 3d 674, 681 (4th Cir. 2005). Defendants in the instant case have raised the exhaustion issue, contending that plaintiff has not exhausted administrative remedies with respect to the claims raised. Although plaintiff alleges that he did file administrative remedy complaints, he has not submitted receipts for those complaints or other evidence from which it could be concluded that an attempt was made to bring the matters raised in the complaint to the attention of prison officials.[2] Nonetheless, it appears that several claims were

---

[2]Additionally, plaintiff's allegations regarding conspiracies to kill him contain statements that are speculative at best. The fact that he makes the statements "under oath" does not cure the speculative nature of the allegations as the affidavit contains no information based on his personal knowledge or facts admissible in evidence. *See* Fed. R. Civ. Proc. 56(e). He points to no objective evidence that the alleged conspiracies existed, nor has he forecast evidence to establish the fantastic allegations he levels at almost

(continued...)

brought to the attention of prison officials and results in investigation. These claims include: (1) the alleged excessive force claim of February 9, 2004, which was fully investigated; (2) a reported injury to plaintiff's ankle on December 14, 2004, which he attributed to a fall;[3] (3) and a reported assault on staff by plaintiff on July 10, 2005. One administrative remedy procedure request was filed by plaintiff regarding the February 9, 2004, incident, and it was administratively dismissed in light of the ongoing investigation into the claim. The records regarding plaintiff's ankle injury and his assault on staff are contained in serious incident reports prepared by correctional staff. With respect to plaintiff's allegation that his rib was broken on or about August 11, 2005, the only records regarding the claim are medical records indicating that plaintiff complained of a broken rib.[4] Thus, the court concludes that plaintiff attempted to exhaust his claims concerning the February 9, 2004, excessive force claim and the December 14, 2004 injury[5] to plaintiff's ankle.

## IV.

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause

---

[2](...continued)
every correctional officer with whom he has come into contact. To the extent that any threatening statements were made by correctional officers, those statements alone do not violate the Eighth Amendment. *See Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (verbal abuse without more, states no claim of assault).

[3] A serious incident report was prepared after plaintiff told correctional staff that he had broken his ankle. To the extent the injury was reported to correctional officials by plaintiff and some form of investigation took place, the issue of administrative exhaustion will be resolved in plaintiff's favor on this claim.

[4] There is no indication that plaintiff's claim of having a broken rib was ever confirmed by an x-ray.

[5] As noted below, however, plaintiff's claim that his injury was the result of excessive force has not been exhausted.

harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992).  This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986).

Defendants have provided numerous records, including investigatory reports and medical records, in support of their motion for summary judgment.[6]  They assert that each time plaintiff claimed he was assaulted by a correctional officer, an investigation into his allegation was conducted by the Internal Investigations Unit of the Maryland State Police and determined to be unfounded.

The alleged assault on February 9, 2004, occurred when plaintiff refused to report for mandatory DNA testing. An investigation revealed that while plaintiff was being escorted to a holding cell by Officers Milbourne and Isaacs, he fell to the floor.  He alleged that the officers assaulted him, but during the investigation admitted that the assault did not occur.  There was no evidence that plaintiff suffered an injury as a result of the incident, nor was there any evidence that an assault occurred.  The investigation was closed.  The lack of any serious or significant injury resulting from the alleged assault precludes a finding that plaintiff's constitutional rights were abridged.  Accordingly, defendants are entitled to summary judgment in their favor on this claim.

On December 14, 2004, plaintiff claimed that he had broken his ankle.  He was taken to the medical unit and was seen by a nurse who applied ice and an ace bandage to plaintiff's swollen ankle. He was seen by a Physicians Assistant on December 16, 2004, who sent plaintiff to University of

---

[6]The documents submitted are submitted as a single exhibit containing more than 50 pages and are not paginated.  Paper No. 25 at Ex. 1.  Local Rule 105.5.b requires that "[i]f any motion, memorandum or brief is accompanied by more than five exhibits, the exhibits shall be tabbed and indexed."  Counsel is reminded to comply with Local Rule requirements in the future.

Maryland Hospital where his ankle was x-rayed, revealing fractures to both the tibia and fibula. Two potential claims (excessive force and inadequate medical care)[7] are presented; however, plaintiff has only raised an excessive force claim regarding the injury to his ankle, which he raises for the first time in this court. All of the reports prepared state that plaintiff claimed he injured his ankle when he was alone in his cell. One report notes that plaintiff changed his story several times as to how he injured his ankle, but none of his statements at the time included an allegation of excessive force. Plaintiff claims in his opposition that he was required to lie about the cause of his injuries in order to protect himself from further harm. The allegation that excessive force was used against plaintiff resulting in a broken ankle has not been exhausted and must be dismissed.

To the extent that plaintiff raises an excessive force claim regarding the July 10, 2005, incident, his claim is without merit. Unrefuted records submitted by defendants establish that plaintiff initiated a confrontation with the officers by squirting an unidentified liquid on them. The only response by correctional officers was to place a protective shield in front of plaintiff's cell window so he could not repeat his performance. Plaintiff was given an institutional infraction charging him with assaulting staff and, by refusing to attend his adjustment hearing, plaintiff chose not to contest the substance of the charges against him. There is no evidence that any force was used against plaintiff on this occasion. To the extent that he attributes his alleged broken rib to this incident, his claim has not been exhausted and must be dismissed.

---

[7]Plaintiff has raised no Eighth Amendment claim regarding the two-day delay in providing him with an x-ray of his injured ankle and defendants do not offer an explanation for the delay. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The pictures of plaintiff following his reported injury are troubling in this regard as it is evident that non-medical personnel concluded that plaintiff was falsely claiming his leg was broken. Paper No. 25 at Ex. "12/4/04 Incident," pp. 24 and 25. Notwithstanding the troubling nature of the evidence presented, the claim has not been clearly raised, therefore, the merits shall not be reached at this time and it will be dismissed without prejudice.

V.

For the reasons set forth herein, the motion for summary judgment shall be granted. An order follows.


Filed: July 11, 2006                                   __/s/_____
                                                       Andre M. Davis
                                                       United States District Judge